IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELE VULCANO HALL | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 10-7603 |
| | : | |
| EASTON AREA SCHOOL DISTRICT, | : | |
| SUSAN MCGINLEY AND JOHN | : | |
| CASTROVINCI | : | |
| Defendants. | : | |

Goldberg, J.                                                                                             February 16, 2012

**<u>Memorandum Opinion</u>**

Plaintiff, Michele Vulcano Hall, has brought suit against Defendants, Easton Area School District, Susan McGinley, and John Castrovinci,[1] alleging various causes of action arising from her former employment with and termination from Easton Area School District. Specifically, Plaintiff's eight-count complaint alleges discrimination in violation of the Americans with Disabilities Act ("ADA") (Count I); retaliation in violation of the ADA (Count II); discrimination and retaliation in violation of the Pennsylvania Human Relations Act ("PHRA") (Count III); retaliation in violation of the First Amendment, brought pursuant to 42 U.S.C. § 1983 (Count IV); denial of equal protection under the Fourteenth Amendment, brought pursuant to § 1983 (Count V); denial of due process rights under the Fourteenth Amendment, brought pursuant to § 1983 (Count VI); breach of contract (Count VII); and tortious interference with contract (Count VIII).

Presently before the Court is Defendants' Motion to Dismiss. This motion seeks to: strike

---

[1] The claims against Defendants McGinley and Castrovinci are brought in both their individual and official capacities. (First Am. Compl. 1.)

punitive damages from Counts I-III; dismiss Counts IV-VI and VIII for failure to state a claim upon which relief may be granted; and dismiss Count VII for lack of subject matter jurisdiction. For reasons set forth below, Defendants' motion will be granted in part and denied in part.

## I. Factual Background

Based upon the averments in the complaint, the pertinent facts, viewed in the light most favorable to Plaintiff, are as follows:

In August 2008, Plaintiff was hired as a teacher by Defendant, Easton Area School District ("District"). Plaintiff's employment was created through a "Temporary Professional Employee Contract." At that time, Defendant, Susan McGinley, was the Superintendent of the District and Defendant, John Castrovinci, was the Director of Human Resources for the District. (First Am. Compl. ¶¶ 6-9, 30; Defs.' Mot. Ex. 1.)

Plaintiff contends that she was informed at the time of her hiring that she would have two to three years to complete her teaching certification. However, in April 2009, Castrovinci told her that if she did not have her certification by the end of the current academic year, she would lose her position. Plaintiff alleges that she suffers from a learning disability, which causes her to require longer time than most people to complete testing and educational requirements. Shortly after being informed that her certification was due by June 2009, Plaintiff requested, in writing, reasonable accommodations under the ADA so as to allow her to secure her certification. Plaintiff reiterated this request numerous times over the late spring and early summer of 2009. Plaintiff claims that the District took no steps in response to her request. (First Am. Compl. ¶¶ 10, 12, 15-18.)

At some point over the summer of 2009, Plaintiff's employment with the District was terminated. While Plaintiff was given no reason for her termination, she surmises it was due to a

District policy of replacing uncertified teachers with certified teachers. Plaintiff claims that this policy was selectively enforced and she was specifically targeted. Plaintiff further alleges that her termination was in retaliation for her relationship with her father, who she characterizes as a vociferous and outspoken member of the District's School Board. (Id. ¶¶ 18, 31-32, 42-43.)

**II.  Standard of Review**

Rule 12 of the Federal Rules of Civil Procedure enumerates various defenses and objections a party may raise in response to a pleading. See FED. R. CIV. P. 12.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the power of a federal court to hear a claim or case. Motions brought under Rule 12(b)(1) may present either facial or factual challenges to the court's subject matter jurisdiction. Gould Elecs., Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000). A facial attack assumes that the allegations of the complaint are true, but contends that the pleadings fail to present an action or claim within the court's jurisdiction. Mortenson v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). A factual attack argues that, while the pleadings themselves facially establish jurisdiction, one or more factual allegations is untrue, thereby causing the case to fall outside the court's jurisdiction. Id. at 891. In evaluating a factual attack, the court must assess the merits of the disputed allegations, which may include evidence outside of the pleadings, because the trial court's "very power to hear the case" is at issue. Id. Once the court's subject matter jurisdiction over a complaint or claim is challenged, the plaintiff bears the burden of proving that jurisdiction exists. Id.

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for failure to state a claim upon which relief can be granted. When ruling on a Rule 12(b)(6) motion, the court must accept the facts pleaded in the complaint as true and construe them in the light most

favorable to the plaintiff.  Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).  The court may dismiss a complaint or claim only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  However, a plaintiff must provide more than a formulaic recitation of a claim's elements that amounts to mere labels and conclusions.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint's "factual allegations must be enough to raise a right to relief above the speculative level."  Id.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 570).

### III.  Discussion

#### A.  Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(1)

Defendants first argue that Count VII of the complaint alleging breach of contract by the District should be dismissed for lack of subject matter jurisdiction.  Defendants assert that Plaintiff is a member of the group covered by the collective bargaining agreement ("CBA") between the District and the Easton Area Education Association, and thus Plaintiff's breach of contract claim qualifies as a grievance under the CBA.  Because the CBA's exclusive remedy for grievances is arbitration, Defendants urge that the Court lacks jurisdiction to hear this claim.  (Defs.' Br. 3, 4.)

The perimeters for the membership of the collective bargaining group are governed by the Pennsylvania Labor Relations Board's certification, No. PERA-R-92-C.  (See Doc. No. 13.)  The certification defines the bargaining group to include: "teachers, counselors, librarians, nurses, dental hygienists, specialists and head teachers; and exclud[es] all non-professional employes, supervisors, first level supervisors, and confidential employes."  (Id.)  Relevant to the instant case, the

certification includes, as members of the bargaining unit, "teachers" with no differentiation between teachers who are professional employees and those who are temporary professional employees. Thus, as a teacher, Plaintiff necessarily was a member of the bargaining group. Additionally, Plaintiff's "Temporary Professional Employee Contract" grants Plaintiff the "rights and privileges of a regular employee of the School District with benefits and fringes stated in the collective bargaining agreement." (Defs.' Mot. to Dismiss Ex. 1.) There is no other reasonable interpretation of this contract except that the parties intended for the CBA's terms and benefits to apply to Plaintiff. Therefore, we find that Plaintiff was a member of the group covered by the CBA.

The Commonwealth Court of Pennsylvania has held that the legislature, through § 903 of the Public Employee Relations Act, determined that "arbitration of disputes or grievances arising out of the interpretation of provisions of a collective bargaining agreement was mandatory." Chester Upland Sch. Dist. v. McLaughlin, 655 A.2d 621, 625-26 (Pa. Commw. Ct. 1999). For the trial court to have jurisdiction, the plaintiff must first demonstrate that an arbitrator found that his claim did not arise out of the provisions of the collective bargaining agreement. Singh v. Sch. Dist. of Phila., 2010 WL 3220336, at *13 n.6 (E.D. Pa. 2010) (citing Davis v. Chester Upland Sch. Dist., 786 A.2d 186, 188-89 (Pa. 2001)).

Here, Plaintiff has not alleged that she raised her breach of contract claim at arbitration or that an arbitrator determined that her claim pertained to a matter outside of the CBA's provisions. Thus, she has failed to show that this Court has jurisdiction. Accordingly, Count VII is dismissed.

    **B.  Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)**

      1.  <u>Counts I-III: Discrimination and Retaliation in Violation of ADA and PHRA</u>

Defendants next assert that the Court should dismiss Plaintiff's requests for punitive damages

under the ADA and PHRA. Defendants argue that such relief is not available under these statutes. (Defs.' Br. 15-16.) We agree.

It is well-settled that punitive damages are not available against municipalities and government entities under Title I of the ADA. 42 U.S.C. § 1981a(a)(2), (b)(1); see also Doe v. Cnty. of Centre, 242 F.3d 437, 457 (3d Cir. 2001) (stating that the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (1991), expressly amended Title I of the ADA to allow awards of punitive damages against individuals and private entities, but not against municipalities and government entities). Because the District is a municipal entity, punitive damages are not, as a matter of law, available against it. Taylor v. Phoenixville Sch. Dist., 113 F. Supp. 2d 770, 777 (E.D. Pa. 2000). Furthermore, the Pennsylvania Supreme Court has held that punitive damages are not available under the PHRA because they are inconsistent with the statute's remedial purpose. Hoy v. Angelone, 720 A.2d 745, 749 (Pa. 1998). Therefore, we will dismiss Plaintiff's request for punitive damages in Counts I-III.

    2. Count IV: Retaliation in Violation of First Amendment

Defendants next assert that Plaintiff has failed to plead a plausible First Amendment retaliation claim. They contend that Plaintiff has not set forth any allegations as to how Defendants' actions interfered with her First Amendment rights. (Defs.' Br. 7.)

To state a First Amendment retaliation claim, the plaintiff must show: (1) she was engaged in protected conduct; (2) the alleged retaliatory action was sufficient to deter a person of ordinary firmness from engaging in that conduct; and (3) there was a causal connection between the protected conduct and the alleged retaliatory action. Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007). "To establish the requisite causal connection, a plaintiff usually must prove

6

either (1) an unusually suggestive temporal proximity between the protected activity and the alleged[] retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof the plaintiff must show that from the evidence gleaned from the record as a whole the trier of fact should infer causation." Id. (citations omitted) (internal quotation marks omitted). Furthermore, in a § 1983 free association retaliation claim, there must be evidence that the state action directly and substantially interfered with the relationship at issue. Penberth v. Krajnik, 347 Fed. Appx. 827, 830 (3d Cir. 2009).

In support of her claim, Plaintiff alleges that Defendants engaged in a number of adverse employment actions against her that were intended to chill the legitimate political expression and activities of her father, and that these actions were in retaliation for Plaintiff's association and affiliation with her father.[2] (First Am. Compl. ¶¶ 31-34.)

While Plaintiff has pled sufficient facts to state a claim under the first two prongs of the test noted above, her complaint lacks adequate facts to satisfy the causal connection requirement of the third prong. Plaintiff does not allege any facts relating to temporal proximity, a pattern of antagonism, or any other details that could support a causal link between her association with her father and the alleged adverse actions taken by the District. Specifically, Plaintiff's complaint is devoid of any facts regarding the extent of her relationship with her father and his political activities, Defendants' position regarding Plaintiff's association with her father, and whether the association had any bearing on her termination or the other actions taken by the District. Rather, the complaint

---

[2] We note that, while Plaintiff's father's political expression is relevant to Plaintiff's free association claim, Plaintiff does not have standing to bring a claim asserting a violation of her father's rights. See Powers v. Ohio, 499 U.S. 400, 411 (1991) (stating that litigants generally cannot rest a claim to relief on the legal rights or interests of third parties).

merely includes the conclusory statement that Defendants' actions "were in retaliation for Plaintiff's association and affiliation with her father and his legitimate First Amendment protected activities." (Id. ¶ 34.) Because Plaintiff's allegations are deficient, we will grant Defendants' motion to dismiss Count IV.

    3.  Count V: Violation of Right to Equal Protection

In Count V, Plaintiff alleges denial of equal protection through discrimination based on her disability and association with her father. She also contends that Defendants selectively enforced their policy of replacing uncertified teachers. Defendants urge that Plaintiff's claim should be dismissed because it fails to allege any actions by the Defendants that deprived Plaintiff of her rights under the Equal Protection Clause. (Id. ¶¶ 42-45; Defs.' Br. 14.)

The Fourteenth Amendment states that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. "To bring a successful claim under 42 U.S.C. § 1983 for a denial of equal protection, [a plaintiff] must prove the existence of purposeful discrimination. [He] must demonstrate that [he] received different treatment from that received by other individuals similarly situated." Warenecki v. City of Phila., 2010 WL 4344558, at *4 (E.D. Pa. Nov. 3, 2010) (citing Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009) (quoting Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir.1990))).[3]

---

[3] To state a claim under § 1983, a plaintiff must also show that his deprivation was committed by someone acting under color of state law. Here, Defendants have not challenged this element so we need not address this issue. Nevertheless, Defendants have raised the argument that, to the extent that Plaintiff is suing the individual Defendants in their official capacities, her claim should be dismissed as redundant of the claim against the District itself. We agree. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978) (stating that official capacity suits against government officials "generally represent only another way of pleading an

Plaintiff first bases her equal protection claim on her status as a disabled individual. (First Am. Compl. ¶ 42.) The Supreme Court has held that the disabled are not a suspect class for purposes of an equal protection challenge. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Thus, state action predicated upon an individual's physical disability does not give rise to a constitutional violation unless there is no rational basis for the action, meaning that "there is no rational relationship between the disparity of treatment and some legitimate governmental purpose." Abrams v. Port Auth. Trans–Hudson Corp., 2010 WL 1265190, at *5 (D.N.J. Mar. 26, 2010) (citing Bd. of Trustees of the Univ. of Ala. v. Garrett, 531 U.S. 356, 377 (2001)). "Moreover, the State need not articulate its reasoning at the moment a particular decision is made. Rather, the burden is upon the challenging party to negative 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Id.

Plaintiff's complaint asserts that Defendants treated her differently than other similarly situated individuals by, among other things, selectively enforcing the District's teacher certification policy against her and terminating her employment. (First Am. Compl. ¶¶ 18, 33, 42-43.)  As discussed above, for this claim to rise to the level of an equal protection claim, Plaintiff must demonstrate that she received different treatment from those "similarly situated" and that "there is no rational relationship between the disparity of treatment and some legitimate governmental purpose."

While Plaintiff has satisfied the latter requirement by alleging that Defendants' actions

---

action against an entity of which an officer is an agent").  Thus, to the extent that Plaintiff's equal protection count asserts claims against McGinley and Castrovinci in their official capacities, such claims are dismissed.

lacked a rational basis,[4] (see id. ¶ 33), she has failed to identify similarly situated people and specific instances of differential treatment to satisfy Iqbal's pleading standard. See Prof'l Dog Breeders Advisory Council, Inc. v. Wolff, 752 F. Supp. 2d 575, 586 (E.D. Pa. 2010) ("The Complaint must identify similarly situated individuals and allege that the plaintiff was treated differently . . . [and] plead specific instances of differential treatment to overcome a motion to dismiss."); see also Mann v. Brenner, 375 Fed. Appx. 232, 238-39 (3d Cir. 2010). Nevertheless, we will grant Plaintiff fourteen days to amend her complaint to allege, with more specificity, how she believes she was denied equal protection based on her disability.[5]

Plaintiff further bases her equal protection claim on her association and affiliation with her father. When it is alleged that a fundamental right has been infringed, such as the First Amendment right of association, the claim is subject to strict scrutiny under the Equal Protection Clause. Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001).

Again, Plaintiff has failed to properly identify similarly situated individuals and specific

---

[4] We note that Plaintiff specifically alleges that the revocation of her contract had no rational basis. (First Am. Compl. ¶ 33.) In addition, although Plaintiff did not explicitly allege that the other negative differential treatment she experienced lacked a rational basis, construing the pleadings in a light most favorable to her, we find that the complaint implies that there is no reason—other than Plaintiff's disability, association with her father, or a personal animus against her—for Defendants' selective enforcement of the District's certification policy and the other alleged differential treatment Plaintiff received. See Montanye v. Wissahickon Sch. Dist., 327 F. Supp. 2d 510, 520 (E.D. Pa. 2004) (finding that general allegations of state action being "arbitrary and wholly irrational" sufficiently allege rational basis element of equal protection claim).

[5] The Third Circuit has "consistently held that when an individual has filed a complaint under § 1983 which is dismissible for lack of factual specificity, he should be given a reasonable opportunity to cure the defect, if he can, by amendment of the complaint." Kundratic v. Thomas, 407 Fed. Appx. 625, 629-30 (3d Cir. 2011) (citing Darr v. Wolfe, 767 F.2d 79, 81 (3d Cir.1985), abrogated on other grounds by Alston v. Parker, 363 F.3d 229, 233 (3d Cir.2004)).

facts of differential treatment. However, we will grant Plaintiff fourteen days to amend her complaint to allege with more specificity her equal protection claim based on her right to assocation.

    4. Count VI: Violation of Right to Due Process

Defendants further contend that Plaintiff has not sufficiently pled a due process claim. While it appears that Plaintiff may only be alleging a procedural due process violation, viewing the allegations in a light most favorable to Plaintiff, we will treat the claim as asserting violations of both procedural and substantive due process.

To state a claim for a violation of procedural due process, a plaintiff must allege that: "(1) he was deprived [by state action] of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." Biliski v. Red Clay Consol. Sch. Dist. Bd. of Educ., 574 F.3d 214, 219 (3d Cir. 2009) (quoting Hill v. Borough of Kutztown, 455 F.3d 225, 234 (3d Cir. 2006) (internal quotation marks omitted)).

In her complaint, Plaintiff alleges that she had a property interest through her contracted employment with the District and a liberty interest in associating with her father. She alleges she was terminated without notice or any procedural due process. (First Am. Compl. ¶¶ 46-50.) Defendants dispute that Plaintiff has a property interest in her employment with the District. Further, Defendants contend that, even if Plaintiff does have a property interest in her employment and liberty interest in associating with her father, Plaintiff has failed to allege any action by the Defendants that interfered with those interests. (Defs.' Br. 11-13.)

A person can have a property interest in a government job if he has a legitimate entitlement to it, not just a unilateral expectation of continued employment. Id. State law governs whether a

property right exists. Iles v. de Jongh, 638 F.3d 169, 173 (3d Cir. 2011). Federal law determines what process is due. McDaniels v. Flick, 59 F.3d 446, 458 (3d Cir.1995).

The Pennsylvania School Code provides temporary professional employees with some expectation of continued employment and therefore entitles them to due process protection. Savage v. Bangor Area Sch. Dist., 2005 WL 745785, *6 (E.D. Pa. 2005). Specifically, the School Code provides that no temporary professional employee "shall be dismissed unless rated unsatisfactory, and notification, in writing, of such unsatisfactory rating shall have been furnished the employe within ten (10) days following the date of such rating." 24 P.S. § 11-1108(a). When an employee has a contract and can only be fired for good cause/unsatisfactory performance, he has a reasonable expectation of continued employment sufficient to create a property interest. Guthrie v. Borough of Wilkinsburg, 478 A.2d 1279, 1282 (Pa. 1984).

As a temporary professional employee, Plaintiff had a property interest in her employment under state law, and her termination constituted an interference with that property interest. Because Plaintiff also alleges that she was afforded no procedure to contest her termination, she has adequately pled a claim for a violation of her procedural due process rights with regard to her employment.[6]

In order to state a claim for a violation of substantive due process, a plaintiff must allege: (1) that he was deprived of a fundamental right, and (2) that the government conduct at issue was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." See

---

[6] However, as we discussed in note 3, supra, to the extent that Plaintiff is suing the individual Defendants in their official capacities, her claim is dismissed as duplicative of the claim against the District.

Kaucher v. Cnty. of Bucks, 455 F.3d 418, 425 (3d Cir.2006) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)).

With regard to the first element, the United States Court of Appeals for the Third Circuit has explicitly held that "public employment is not a fundamental right entitled to substantive due process protection." Nicholas v. Pa. State Univ., 227 F.3d 133, 142 (3d Cir. 2000). Therefore, to the extent that Plaintiff's complaint states a substantive due process claim relating to her property interest in her employment, the claim fails.

Lastly, because Plaintiff has failed to allege how Defendants' actions deprived her of her right to associate with her father, Plaintiff's procedural and substantive due process claims relating to her liberty interest in her relationship with her father are deficient.

Therefore, only Plaintiff's procedural due process claim with respect to her property interest in her employment survives.

5. Count VIII: Tortious Interference with Contract

In Count VIII, Plaintiff avers that Defendants McGinley and Castrovinci wrongfully interfered with her contractual relations. (First Am. Compl. ¶¶ 57-61.)

Under Pennsylvania law, "[o]ne who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the third person's failure to perform the contract." Wagner v. Tuscarora Sch. Dist., 2006 WL 167731, at *12 (M.D. Pa. Jan. 20, 2006) (citing Judge Tech. Servs., Inc. v. Clancy, 813 A.2d 879, 887 (Pa. Super. Ct. 2002)). In order to prove a claim for intentional

interference with a contractual relationship, a plaintiff must demonstrate: (1) the existence of a contractual relationship; (2) the defendant's intent to harm the plaintiff by interfering with that contractual relationship; (3) the absence of privilege for such interference; and (4) damages resulting from the defendant's actions. Id. (citing Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 530 (3d Cir 1998); Triffin v. Janssen, 626 A.2d 571, 574 (Pa. Super. Ct. 1993)).

A right of recovery under the theory of tortious interference only exists if there is a contractual relationship between the plaintiff and a party other than the defendants. Wagner, 2006 WL 167731, at *12 (citing Killian v. McCulloch, 850 F. Supp. 1239, 1251 (E.D. Pa.1994); Nix v. Temple Univ., 596 A.2d 1132, 1137 (Pa. Super. Ct. 1991)). Thus, in a school setting where the contract at issue is an employment contract, a school district employee generally cannot make a tortious interference with contractual relations claim against a school district's employees, agents, or members of the School Board, because, when acting in their official capacity, they are not "third parties." See Forrest v. Owen J. Roberts Sch. Dist., 2011 WL 1549492, at *16 (E.D. Pa. Mar. 31, 2011). However, a school district employee or agent can be considered a third party liable for inducing a breach of contract if the individual acted to interfere with the plaintiff's contract because of personal motivation. See Whaumbush v. City of Phila., 747 F. Supp. 2d 505, 513 (E.D. Pa. 2010).

Here, Plaintiff argues that McGinley and Castrovinci acted with specific intent to harm her. Specifically, Plaintiff alleges that these Defendants "acted personally to orchestrate the [adverse] actions taken against Plaintiff," "intended to harm Plaintiff by interfering with her contract of employment with [the District]," and took the actions "in retaliation for Plaintiff's association and affiliation with her father." (First Am. Compl. ¶¶ 34, 37, 59.) If we accept these allegations as true, as we must at this stage, Plaintiff has raised a reasonable inference that McGinley and Castrovinci

acted out of personal motivation, and therefore outside the scope of their employment. Thus, Defendants' motion to dismiss Count VIII is denied.

## IV. Conclusion

For the reasons set forth above, Defendants Motion to Dismiss will be granted in part and denied in part. An appropriate Order follows.